Good morning, your honors. John Ballas on behalf of James Back. Mr. Back is present in the courtroom sitting behind me. Proceeding pro se, Mr. Back was convicted by a jury of three counts of filing false tax returns and four counts of failing to file tax returns. The key issue at trial was whether Back acted willfully in failing to report his income as wages in 2006-2008 and then failing to file tax returns for tax years 2009-2012. In the government's case, the district court admitted substantial, irrelevant, and unfairly prejudicial evidence that was used to convict him. Namely, first, that Back used his earnings to purchase gold and precious metals totaling $431,000. And second, that Back's tax return was one of thousands or tens of thousands that the IRS has received and continues to receive that was modeled after a convicted tax protester, Peter Hendrickson, who was convicted and went to prison. And that information, that was presented to the jury through an IRS witness. With respect to the first set of evidence, the $431,000 in gold and precious metals, that evidence was completely irrelevant to the charges here. The evidence was undisputed that Mr. Back worked for Alisca Pipeline. His W-2 forms were presented through the testimony of an Alisca employee. And they also presented E-Trade records that showed that he had received the income. What he did with the money after he received it was irrelevant to whether or not what his earnings were. It was also irrelevant to whether or not he acted willfully in this case. That is, whether he voluntarily and intentionally violated a known legal duty of his. Well, okay, but so you, I am assuming that you would agree that the district court's admission of evidence is for abuse of discretion. Generally, yes. Okay, so why wasn't his, what was the theory that the gold and the precious metals were relevant? What was the offer of proof on that and why weren't they marginally relevant? I mean, the court, the judge said it's not illegal to do this, but it is, you know, I can see that it is further indication of support for the fact that he had earnings and what he did with his earnings. And maybe that isn't, well, it's not illegal to do that, it's not necessarily probably the natural, you know, I leave my deposit in the bank and not, I don't go put, you know, I don't have a stack of gold in my house. Right, but that point, whether or not you kept it in a bank or a stack of gold in your basement, or you bought a Maserati is really irrelevant to whether or not you earned income and whether or not you failed to report it. It's unlike, there are some cases that are different where you're hiding business income. Well, it's a little bit easier, though, for, you know, when the IRS is looking for people's income, that they do have to, you know, it's a little bit easier to find it in bank accounts than it is in gold. In this case, Mr. Back, in his opening statement, admitted that he earned income. He never disputed it. He stated it all along. All he said was... So what's the prejudice to you? The prejudice is it made the jury believe that he was wealthy, had substantial incomes, and in combination with the other errors in this case, made it look like they were convicting him based on things other than looking at the legal elements. With respect to the Court's question on Excerpt of Record 19, when Mr. Back, when the questions, they first started doing the e-trade statements, and the information came that he was buying gold, Mr. Back said he would like to object at Excerpt of Record 19. In Excerpt of Record 18, the Court asked the prosecutor to respond, and the prosecutor said they're simply showing his knowledge of income, the money going into his accounts, the money going out of his accounts during the prosecution years. It goes to show his intent, his willfulness, his knowledge of the receipt of the income, that he didn't have zero wages, and that he had a filing requirement. But Mr. Back had admitted that he had earnings. That was not really an issue in the case. It was willfulness. That issue was, that prejudice was compounded by the other information, that the IRS receives thousands and tens of thousands of these tax returns, and that the person who originated it was convicted at another jury trial where the same IRS agent testified. Was there any objection to that evidence? There was no objection. So it has to be plain error under Olana for us to consider it. It would have to be plain error, and it could also be considered in combination with the other errors. I think the error does satisfy the plain error standard, because, one, it was plain or obvious, and it affected his substantial rights and the due administration of justice. The Court has said the general standard is whether there's a reasonable ---- Mr. Ballas, here's the problem I have with ---- I'm sympathetic to the errors that you've pointed out, but I have problems with the other side of the case. Mr. Back was constantly warned by people that he was doing tax evasion, and what is particularly difficult for me on the issue of whether he was doing this in good faith or willfully is the preparation of the form of W-O instead of W-9. He prepared a form which has the appearance of being a withholding form. It looks like an IRS form, and it shows, and it's a phony form. Now, how do you explain preparation of a phony form? Well, that was a ---- it was a substitute form that was intended when you don't receive the form from your employer, and he reported zero income because he ---- his position is that he believed he had zero income, zero wages, because he ---- But he prepared the form to make it look like an IRS form when he wasn't ---- when it wasn't an IRS form. So wasn't the jury entitled to say this man was trying willfully to evade taxes? It wasn't look like it was made to come from the employer. It was a substitute form which is designed to produce with your tax records when you don't receive the form from the employer. I think ultimately ---- If you don't receive any income from your employer, you don't get any sort of a form. He prepared a form to show that he wasn't getting any income from the employer, a form which doesn't exist. You can go through all the IRS forms, and you can't find such a form. Well, I think the form I'm referring to is the substitute W-2 form, and that is it's ---- But he didn't get it from the IRS. It wasn't a substitute W-2 form. It was a back-prepared facsimile of what someone might incorrectly think was an IRS form. That's tough to swallow. Well, but that ---- I mean, that was obviously not designed to influence the IRS into thinking that it was some other official ---- It wasn't designed to influence. Well, it was designed to assert his position that his labor to the IRS, his labor did not count as income, and that he had zero wages under the tax law. And I think ultimately it's a jury question ---- Did the IRS ask for that form? Well, it's a form you submit with your tax returns. It's not a form you submit with the tax returns. It's a form that he made a confection of for his tax returns. And I think ultimately, you know, I'm not saying that the government had some ---- I'm not disputing the government had some evidence of willfulness, but ultimately this is a jury question that he's entitled to have under a fair trial, and not with all this improper, prejudicial, irrelevant evidence. I'd like to reserve my remaining 25 seconds for rebuttal. Thank you. May it please the Court, Jeffrey Bender on behalf of the United States. No, I did not. I'm handling the appeal. I was not the trial attorney in this matter. I'd like to start addressing Judge Bea's question about the false forms submitted by the defendant here. He submitted many different false forms. He submitted with his tax returns false corrected W-2s that reflected zero wages from his employer. That's a legitimate form, but the way he used it was false and fraudulent. He also submitted, as Judge Bea pointed out, false or some sort of form that is not a real form. And I draw the Court's attention to supplemental excerpts of record pages 22 to 23. That was ---- the testimony was from an Alaska employee who testified that they received this document from the defendant. From the witness's perspective, meant to influence how they would treat his payroll. Let's take off with the last thing that Mr. Ballas said. He doesn't dispute that you have some evidence, the government has some evidence, of willful avoidance, evasion of taxes. But you have to balance that with a lot of things that the government did wrong in this case. First of all, the gold purchases are totally irrelevant, are they not? I mean, we think, we certainly submit that they're relevant for the ---- What was your offer of proof? Excuse me? What was your offer of proof? I think as the Defendant's Counsel has read, the government explained exactly what its offer of proof was when the defendant first objected. It was offered to show that he knew he had income, that he knew that he earned wages, that he was supposed to ---- But he admitted that in his opening statement. Well, the opening statement's not evidence. He disputed ---- Admission by a party, litigant, right? It's true, but the government's entitled to prove its case. In this case, the ---- But it's cumulative evidence of something that has already been proven. You can't prove a person's wealth just to show that he intended to avoid taxes. That's what you're doing. Well, I would point out that the amount of money ---- and he put it all in gold. That, to me, is definitely unfair. I would point out to the Court that the amount of money at issue is not prejudicial, and that should have come and it did come in many ways. The fact that the defendant earned over $900,000 that he failed to report, that was necessary for the government's case. So the narrow issue that the defendant objects to is just the fact that he's put it into gold. Now, the district court numerous times instructed the jury that there's nothing wrong ---- It's hard to try a case against a pro se, anyone that's ever done that, because you're thinking to yourself, okay, I don't have a sharp lawyer on the other side, so I'm going to do whatever I want. But if you don't do it right, and pro ses very rarely object to instructional problems, which is the case here. You have an instructional problem. So is your argument here the evidence was overwhelming and no one could have come to any other conclusion? Is this for the willfully, knowingly jury instruction? Well, yeah. I mean, it wasn't right. It wasn't right. And he didn't object, but he didn't really ---- But that doesn't really ---- It puts him in a different standard for how we review the instructional error. But someone should have been a little sharper about this. And when the judge gets it wrong, then the prosecutor still has a responsibility to get it right. Well, I would point out that the defendant did object several times in the trial. He offered his own jury instruction. He filed it at the beginning of the trial that he wanted the court to give. So he wasn't totally removed from the whole process of trying the case. Now, I would agree with the court that the jury instruction, the knowingly instruction, was not ideal. It was not perfect, and it should not have ---- It was wrong. It was wrong. But the question for the court here, as Your Honor pointed out, we're on a plain error standard review. So the question for the court is, was it clear and obvious error, first of all, and how did the defendant meet his burden of proving that a prejudice to them? Well, why don't you tell us, let's just ---- If the gold's not there and the instruction is wrong, what's the other evidence that is so overwhelming that he's guilty? Well, I'd point out, first of all, that a United States tax court judge told the defendant that his arguments were frivolous and they've been rejected by courts, including the Ninth Circuit. So I'd start off with the evidence about his tax court proceedings, the fact that he did this for several years. We said it's a case in our brief about how a pattern of behavior is evidence of his willfulness, and his prior tax compliance for several years, specifically in the record 2004 and 2005. He filed returns correctly. He made an estimated tax payment, which is to show that he was trying to comply with his tax obligation as of April 15th of 2007. And then he went ahead and started committing his tax fraud after that. So I think his prior tax compliance, the number of years he's involved in this, numerous warnings from the IRS, a warning from his direct supervisor that he was messing with fire and going down a bad road, as well as just general warnings from his employer about tax compliance and consulting with somebody if he wanted to go down and do what he's proposing to do, as well as, I think, a warning from the Alaska Permanent Dividend Fund that this money is taxable. When you combine that with the fact that he's reporting false corrected W-2s on his false tax returns, trying to substantiate with the IRS that he's receiving no wage income from Alieska when, in fact, he's receiving substantial income, as well as corrected Forms 1099 that purported to report much lower income from E-Trade, much lower income from the Alaska Permanent Dividend Fund, I think those were submitted to try to substantiate with the IRS and confuse them into thinking he actually earned zero wage income, zero income from E-Trade and zero income from the Alaska Permanent Dividend Fund. You do agree that — No reasonable juror could have come to any other conclusion that — Exactly. — did not have a good faith belief that this was legal. Exactly. You do agree that the evidence about Hendrickson being convicted and other people being convicted is totally improper. Well, the only evidence about — the evidence that Hendrickson was convicted, and we agree that was improper, and we made that concession in our brief. There was no evidence anybody else was convicted. There was evidence other people filed these returns, and we explain in our brief how that was relevant to explain why the IRS is sending warnings and why they're publishing on their website that this is a scheme and, you know, fraud, don't fall for it, is what they're trying to warn taxpayers. So we make the narrow concession that the evidence about Peter Hendrickson being convicted was irrelevant, given the lack of evidence in the record that the defendant here knew that Peter Hendrickson was convicted. If the defendant knew that Peter Hendrickson was convicted, then I think that would have relevance because if the defendant knew that somebody else who promoted this scheme went to prison, that would be — Conceded that, right? Yeah, exactly, Your Honor. All right. Seeing no other questions from the panel, we would rest in our briefs and ask that the Court affirm the conviction. Thank you. Thank you, counsel. Mr. Butler? Even under the plain error standard, the standard is whether there was a reasonable probability that the errors contributed would add a different result to trial. Here we have three significant errors. There's confusion over the mens rea, where the jury was instructed unknowingly, where the mens rea was willingly. There was improper evidence about gold being — that he had purchased gold, $430,000 and could be construed as being quite wealthy, as well as the Hendrickson and all the other returns that the IRS continues to receive today. In light of all this, the willfulness standard is intentionally designed as a pretty high standard. It's higher than the mens rea than in other criminal statutes, and that a person could have a sincere belief in their position, even if they had submitted tax returns previously, if they have changed their mind or changed their position based on additional information, and even if they have been warned by other people. That's the question. Whether his beliefs were sincere, that he didn't have to report his labor as income, or whether or not he wasn't sincere in his belief. And there's a reasonable probability that with a different properly instructed jury, without the improper evidence, he wouldn't have been convicted. Thank you, counsel. Thank you very much. Thank you for your argument. The case just heard will be submitted for decision. Thanks for your argument.
judges: Thomas, Callahan, Bea